UNITED STATES, Appellant

v

EDWARD B. BOYD, Private First Class, U. S. Army, Appellee

7 USCMA 380, 22 CMR 170

381

No. 8383

Decided October 19, 1956

*First Lieutenant William K. Davenport* argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

*First Lieutenant Gene E. Overbeck* argued the cause for Appellee, Accused. With him on the brief was *Captain Frank C. Stetson.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Despite his plea of not guilty, the accused was convicted by a general court-martial sitting at Fort Knox, Kentucky, of larceny, in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. He was sentenced to bad-conduct discharge, partial forfeitures, and confinement for ten months. The convening authority approved, but the board of review reversed, one member dissenting. The Judge Advocate General of the Army then certified two questions for our consideration, and these will be set forth after enough of the facts have been detailed to render them intelligible.

On March 15, 1955, the accused borrowed a carrying bag for the week-end from a fellow-soldier, Private Oscar Green. While the accused watched, Private Green removed his camera from the bag, placed it on a shelf in his wall locker, and handed over the bag. On March 18, Private Green had

382

occasion to look for his camera and found that it had been removed without his knowledge or consent. Subsequent investigation revealed that the camera, which was worth about $30.00, had been pawned at Jake's Pawn Shop, Lexington, Kentucky, on March 16, 1955, by the accused. In dealing with the pawnbroker, the accused had used his correct name and had placed his thumb print on a card bearing information as to the particulars of the transaction, as required by local law.

The accused admitted from the witness stand that he had pawned the camera, but he asserted that he had not known at the time that it was Green's camera. He testified that on the day in question he was proceeding homeward in Lexington when he met a soldier who asked to borrow some money on a camera. The accused refused the request and the soldier then asked him to pawn the camera, saying that he was unable to negotiate the loan for he had other shopping to do and it was near the closing time for retail establishments. The accused agreed to do so and took the camera to a nearby pawnshop. After pawning the camera, he left the shop, waited three or four minutes until the soldier returned, and handed over the money which he had received. Although the accused diligently searched for the soldier, whose name he did not know, in the messhall and at a company formation over a period of three weeks, he was unable to locate him. The accused conceded that he was hard pressed for money during this entire period. On cross-examination, he specifically denied that he had pawned another camera on February 19, 1955, and a radio on March 15, 1955, at Jake's Pawn Shop.

In rebuttal, it was shown by the prosecution that the accused had pawned both a radio and another camera at this pawnshop on the dates mentioned earlier. Trial defense counsel objected to this rebuttal evidence, contending that it was not relevant, and also requested that appropriate limiting instructions be given by the law officer if the evidence was admitted for impeachment purposes. The law officer overruled both the objection and the request, and his remarks at the time make it quite clear that he did not regard the rebuttal evidence as necessarily limited to one specific purpose, such as impeachment.

The board of review first held that this rebuttal evidence was not relevant to any of the issues in the case, for the accused had admitted pawning Green's camera. Therefore, it reasoned, the evidence could only have served an impeachment purpose, and should have been so limited by instructions. Next in its process of reasoning, the board mentioned the rule that testimony given on cross-examination concerning immaterial or irrelevant matters should be considered binding upon the cross-examiner and not subject to rebuttal. It then concluded that the testimony concerning prior pawnings was neither relevant nor material and that it should have been excluded altogether. The last step in the board's reasoning was this: The inadmissible rebuttal evidence indicated, by innuendo, prior misconduct on the accused's part, and thereby prejudiced him in a substantial manner. The Judge Advocate General of the Army now seeks to ascertain whether we view the law officer's ruling as erroneous, and, if so, whether the accused was thereby prejudiced.

## II

In all that was said by the board of review in its opinion, and by the dissenting member in his separate effort, we think several matters have been overlooked. The competency, relevancy, and materiality of testimony may depend, to a large extent, on the theories of the parties, and it must be kept in mind that evidence which under broad generalities may be considered as irrelevant and incompetent may become admissible if it tends to cast light on a material matter injected into the case by either party. For the most part, in light of the posture of the record, the board failed to consider carefully the various grounds which might have supported the admission of the evidence. Failing to do that led them into error, for if the testimony bears on any essential element of

**383**

the offense, or serves to refute a theory of defense, no restriction on its use should be imposed by instructions. Therefore, the grounds of admissibility must be determined before the instructional question can be reached.

In approaching the issues involved, it must be borne in mind that we are not here dealing with the question of the admissibility of evidence of previous offenses or previous acts of misconduct, for the reason that the pawning of one's own property is neither, and here there is no showing that the property pledged on the two prior occasions was stolen from third parties. What is before us for decision is whether the disputed testimony is relevant as bearing directly on the wrongfulness of a taking or criminal intent. If the prior pledging of property is germane to those matters, then the denials by the accused during cross-examination were subject to contradiction and the admission of the questioned testimony was proper for that purpose. In order to determine that question, certain factual details must be evaluated.

The posture of the testimony is such that there can be no question about these facts: That on March 15, 1955, Private Oscar Green was the owner of the personal property in question; that on that date, accused asked him for the use of a bag which Green used for carrying his camera; that in response to the request and in the presence of the accused, the camera was removed from the bag and placed on the shelf in Green's wall locker; that accused had access to that locker for he had a wall locker in the same room; that within twenty-four hours after the accused observed the camera being placed on the shelf, it was pawned at a loan shop in Lexington, Kentucky; that the accused pledged the camera and obtained the sum of $15.00 as a loan upon the property; and that he represented at the time of the transaction that he was the owner.

From the evidence related, the only factual dispute before the court was whether the accused took the camera from the wall locker with the intent to deprive Private Green of his property,

or whether it was given to him by the never-again-to-be-found member of his unit under the mysterious arrangement set forth above. Any testimony bearing directly on either side of those questions was admissible, and for the reasons we hereafter present, we conclude the board of review erred when it found that the evidence of pawning involved a collateral matter which could not be rebutted.

Relevant evidence has been defined as "any matter of fact the effect, tendency, or design of which, when ▮▮▮▮ ▮ presented to the mind, is to produce a persuasion concerning the existence of some other matter of fact—a persuasion either affirmative or disaffirmative of its existence." 20 Am Jur, Evidence, § 247, page 241. Here the questioned testimony would have a tendency to persuade a court member that the accused stole the camera for it would establish as a fact that accused needed money badly. It requires little imagination to believe that if the accused was financially embarrassed, he would probably be actuated to obtain money by the means here employed. Considered in that manner, the Government could have introduced the testimony on direct examination. Professor Wigmore in his work on Evidence, 3d ed, § 392, explains the test in the following manner:

". . . Nevertheless in cases of merely peculative crime (such as larceny or embezzlement), and in civil cases where the issue is whether the defendant *borrowed money* or not, the fact that he was in need of it at the time is decidedly relevant to show a probable desire to obtain it and therefore a probable borrowing or purloining; and there is here not the same objection from the standpoint of possible Unfair Prejudice. . . ."

A second ground to support the admission of this testimony can be found in accused's attempt to explain his possession. He ▮▮▮▮ ▮ produced facts to show he used his own name and address when he pledged this particular camera, and

he argued that a person dealing with property he knew was stolen would, in all probability, have used a fictitious name. To meet that contention, the Government could introduce testimony to show there were reasons which denied him a free choice. The pledging of two other articles within a thirty-day period, one the day before this transaction, would definitely make it difficult for him to transact business while using an alias. He was beginning to become a familiar figure around that particular pawnshop, and the use of a fictitious name would probably result in his being caught on the spot with the stolen merchandise in his immediate possession. His denial of the previous transactions, if binding on the Government, would leave him free to assert, as he did, that he was innocent, for a person with a guilty conscience would seek to prevent detection by using an assumed name. Unless there were compelling reasons for the accused to use his own name, his argument would be plausible. Here the questioned testimony rebutted any favorable inference which might be drawn from his method of operation.

A third reason for supporting the law officer's ruling is that the testimony goes squarely to the ▮ intent to deprive permanently. Sometimes a hard-pressed person pledges a third person's property with an intent to return it before the loss is discovered. The accused advanced the theory that this property was to be redeemed by the anonymous soldier on payday, but if he was the thief, that may have been his own intent. A showing that he had other property pledged which was not reclaimed within a pay period would tend to show there was little likelihood this camera would be returned in a few days.

There may be other reasons why the testimony was admissible, but if its admission can be upheld ▮ under any of the well-recognized rules of evidence, the fact that it might also be admissible on other grounds is superfluous. True, it served effectively for impeachment purposes, but an accused who elects to testify can be impeached on any material matter, and impeachment evidence may serve more than one purpose if it is otherwise relevant. United States v Villasenor, 6 USCMA 3, 19 CMR 129.

Our development of the reasons why this testimony was admissible also disposes of our next area of ▮ disagreement with the board of review, which finds root in the claim that the law officer erred in refusing to give a limiting instruction. Obviously, the testimony had some impact on the accused's credibility, for it definitely tended to indicate that he would falsify from the witness stand. But it had a more important purpose for, as indicated above, it added weight to the Government's testimony that the accused took the camera with intent to deprive Green permanently of his property. When testimony in a larceny case is admissible on the general issues, it is not error for the law officer to refuse to limit it to impeachment purposes, even though requested so to do by a defense instruction. Moreover, there is no duty on the law officer to assess each bit of evidence and sua sponte advise the court-martial members on the manner in which it will be used.

III

We will hereinafter assume, for the purposes of discussing the second certified issue, that the law ▮ officer erred, either in admitting the questioned evidence at all, or in failing to give a limiting instruction of some sort. We, therefore, must determine whether the assumed error materially prejudiced the accused in some manner.

We have repeatedly held that where the evidence of guilt is overwhelming, the receipt of inadmissible testimony of a non-flagrant variety is not prejudicial. The only real issue in this case was whether the accused came into possession under the honest, but mistaken, belief that a third party was the owner of the property. His explanation approached absurdity. It is as old as the crime itself, and when tested solely

**385**

within its own confines is unworthy of belief. From it alone the court would conclude he was not telling the truth. A camera which is placed in the owner's locker, with knowledge of the accused as to its place of safekeeping, turns up missing on the next day after accused knows of its location. A third person in civilian clothes who is supposedly a member of accused's company, but whose name is unknown, just happens to meet accused in the vicinity of a pawnbroker's place of business. The accused is on his way home, but he deviates some considerable distance from his ordinary route to get to the meeting place which conveniently happened to be only a short distance from the pawnshop. The unnamed individual turns the stolen camera over to the accused to pawn for $20.00 or $25.00. The possessor does not have time to pledge the articles because he must do some shopping, yet he is back in three or four minutes. The accused pledges the property for less than the agreed amount, and the soldier returns to receive the money. Nothing is said about the variation in price, and the pawn ticket is not delivered to the friendly stranger (or strange friend), for it is retained by the accused. The soldier in civilian clothes has money with which to shop and the accused has none. The date of redemption was supposed to be payday, but no attempt was made by accused to find the missing friend when the time came. It is no wonder he could not be found by the accused nor well enough described by him so that anyone connected with the unit could locate him, for he no doubt never existed. If that explanation of possession of property stolen under the circumstances we find here is believable, then perhaps the court-martial was entitled to give some consideration to the fact that accused did not tell the truth about his prior transactions. However, in our judgment, his own story destroyed his credibility, and his other pawnshop dealings were insignificant. It, therefore, follows that the accused was not materially prejudiced, even if we assume that error occurred.

The certified questions are answered in accordance with the views expressed

**386**

herein. The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Army for reference to a board of review for further review in conformity with this opinion.

FERGUSON, Judge (concurring):

I concur. As to Part III, I concur only in the result.

QUINN, Chief Judge (dissenting):

The Government contends that the law officer's ruling admitting the evidence of other pawnings ▮ was correct from several points of view. It maintains that the evidence was admissible to show that the accused entertained an intent to deprive the owner permanently of the camera as distinguished from an intent to deprive him temporarily of it. However, the evidence clearly does not raise any issue of wrongful appropriation.

The accused's account of his possession of the camera excludes all criminality. He was either not guilty in any degree of a criminal taking, or he was guilty as charged; there were no other alternatives presented by the evidence. United States v Andis, 2 USCMA 364, 8 CMR 164. See United States v Smith, 2 USCMA 312, 8 CMR 112. Moreover, the prosecution expressly offered the evidence of other pawnings for impeachment and not to show an intent to appropriate either temporarily or permanently. Manifestly, the Government's theory at the trial did not contemplate that the evidence was relevant to the intent element of the offense charged. Its present contention is entirely without merit.

Three other grounds of general admissibility are advanced by the Government: (1) That the evidence is relevant in that it indicates the accused needed money, and, therefore, it shows a motive for the commission of the offense; (2) that the evidence shows a course of dealing and familiarity with the pawnshop; (3) that it tends to show a "fund-raising scheme or plan" on the part of the accused. The accused's familiarity, or lack of familiarity, with the pawnshop is wholly irrelevant and immaterial to the merits of the

case. Hence, the prosecution was bound by the accused's answers on that point, and it could not introduce contrary evidence in regard to it. McKenzie v United States, 126 F2d 533 (CA DC Cir) (1942); Safter v United States, 87 Fed 329 (CA8th Cir) (1898).

The third and fourth grounds suggested by the Government are essentially the same. Both relate to a probable motive for the commission of the offense. With some extention from motive to intent, these reasons are accepted by the majority as proper grounds of admissibility. Assuming that evidence of motive or intent was ▪ independently admissible under the circumstances of the case (Cf. Young v United States, 214 F2d 232, 240 (CA DC Cir) (1954)), the accused was entitled to an instruction on its limited relevancy in order to keep the court members from attributing to it a probative value which it did not possess. Orloff v United States, 153 F2d 292 (CA6th Cir) (1946); Martin v United States, 127 F2d 865 (CA DC Cir) (1942). As the Court of Appeals for the Sixth Circuit said in the Orloff case (page 295):

"However, the testimony was admissible only upon the existence of fraudulent intent. Weiss v. United States, 5 Cir., 122 F.2d 675; Wood v. United States, 16 Pet. 342, 41 U. S. 341, 352, 10 L.Ed. 987. While the request to charge was not a precise statement of the law it fairly apprised the court of the point made and required the court to charge the jury to consider the testimony only upon the question of guilty knowledge and intent to defraud the government. Richardson v. United United States, 6 Cir., 150 F.2d 58, 66. The failure to give this instruction constituted prejudicial error for which a new trial must be ordered. The appellant was entitled to a correct statement of the law from the court."

Here, the law officer not only refused to give a limiting instruction as requested, he deliberately disregarded the prosecution's own effort to confine the evidence to impeachment. His ruling was tantamount to a positive instruc-tion that the court members could consider the evidence of other pawnings for all purposes. Cf. United States v Andis, supra. As a result, the court members were permitted to "use the evidence incorrectly for a different end." United States v Villasenor, 6 USCMA 3, 10, 19 CMR 129. The law officer's action, therefore, was error. Accordingly, I would answer the first certified question in the affirmative.

Error without prejudice does not require invalidating an otherwise proper conviction. Therefore, the ▪ second certified question asks this Court to determine whether the error deprived accused of a substantial right. A majority of the board of review held that it did. I agree.

At the very least, the evidence of other pawnings created a strong suspicion of wrongdoing. See United States v Hubbard, 5 USCMA 525, 18 CMR 149; People v Burness, 53 Cal App2d 214, 127 P2d 623. That such suspicion would have a decided impact upon the court members in determining the accused's guilt or innocence is self-evident. Therefore, I would answer the second certified question in the affirmative.

In addition to the questions raised by the certificate for review, the accused has asked us to review the correctness of the law officer's instruction in connection with the accused's testimony. The controverted instruction reads as follows:

"In connection with accused's testimony, I want to advise the court that if you should determine that his testimony was uncontradicted, and he has not been impeached, or his explanation concerning the alleged offense of larceny is not improbable, then the witness is to be believed and the court is not at liberty to deliberately reject his testimony. However, in this connection you should especially look to the interest which the respective witnesses have in the case or its result. Where the witness has a deep, personal interest in the result of the case, the temptation is strong to color, pervert or withhold the facts.

The law permits the accused, at his own request, to testify in his own behalf. The accused here has availed himself of this privilege. His testimony is before you, and you must determine how far it is credible. The deep, personal interest which he may have in the result of the case should be considered by you in weighing his evidence and in determining how far, or to what extent, if at all, it is worthy of belief."

In United States v Nash, 5 USCMA 550, 18 CMR 174, we condemned a substantially similar instruction because it was "unduly emphatic about the nature of the accused's interest." In view of my disposition of the certified questions, however, I need not decide whether, in the circumstances of this case, the instruction prejudiced the accused. I would affirm the decision of the board of review setting aside the findings of guilty and the sentence.