UNITED STATES, Appellee

v

PHILIP D. WALTER, Airman Second Class,
U. S. Air Force, Appellant

14 USCMA 142, 33 CMR 354

Major William A. Crawford, Jr., argued the cause for Appellant, Accused. With him on the brief was Colonel Daniel E. Henderson, Jr.

Major Duane R. Bernard argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel Emanuel Lewis.

## Opinion of the Court

KILDAY, Judge:

Convicted by general court-martial for a number of infractions of Article 121, Uniform Code of Military Justice, 10 USC § 921, committed over a period of some fifteen months, accused was sentenced to bad-conduct discharge, total forfeitures, confinement at hard labor for two years, and reduction. The convening authority reduced the period of imprisonment to one year, but otherwise approved the findings and sentence, and a board of review in the office of The Judge Advocate General of the Air Force affirmed. Thereafter, accused petitioned this Court and we granted review, limited to a single issue, for determination of:

Whether the accused was prejudiced by the failure of the law officer to declare a mistrial after the defense counsel's statements required the entry of not guilty pleas.

Accused's trial was held at Chanute Air Force Base, Illinois. He was arraigned on eight specifications of larceny and a single count of wrongful appropriation. Initially, accused entered pleas of guilty as charged to the last-mentioned offense, and not guilty to the larcenies but guilty of the included lesser crimes of wrongful appropriation. The prosecution then proceeded to present its case, which showed that the articles and money involved had been taken without authority. The evidence also established that certain of the missing items were found in accused's possession. Finally, voluntary pretrial admissions by accused were introduced. In these extrajudicial statements he admitted he had taken the property in question, although he

asserted he intended to return the same to his victims.

After the prosecution rested its case, defense counsel began an opening statement to the court-martial with these remarks:

"Gentlemen, my presentation of the defense I hope will not be too lengthy; however, I do intend to call two witnesses. As you've already learned from the pleas, we are pleading guilty to the lesser included offense of wrongful appropriation, and no doubt the question has arisen in your mind, the reason for so doing. We do not intend to attack the voluntariness of the confessions which have just been admitted into evidence; however, we will show through competent and legally admissible evidence that *the accused, at the time he allegedly performed his larcenies, did not have the requisite mental intent, the required ability to form the degree of intent, which is required for the charge of larceny.* As you no doubt are familiar—and which will be brought out to you at a later time in the trial—the charge of *larceny requires a specific intent as opposed to a general intent, which is contained in the lesser included offense of wrongful appropriation.* The difference, again, lying in that the specific intent must be an intent to permanently deprive the owner." [Emphasis supplied.]

At that juncture, the law officer interrupted, and an out-of-court hearing was held. During the course thereof, the law officer pointed out that wrongful appropriation involved not merely a general intent but, like larceny, re-

143

quired a specific intent. Thus, he indicated that while he did not wish in anywise to interfere with the presentation of the defense case, he was concerned over the providence of the pleas of guilty previously entered, in light of defense counsel's statements as to general intent only in wrongful appropriation and regarding lack of capacity to entertain specific intent. A lengthy discussion ensued, and defense counsel's apparent initial misconception as to the nature of the criminal intent in wrongful appropriation was set straight. He indicated that a possible continuance offered by the law officer was unnecessary, and further stated that no problem would be occasioned, by reason of this development, with respect to the prosecution's evidence, which had been introduced largely by way of stipulations of expected testimony. Defense counsel affirmed that he was content to request that the pleas of guilty previously entered be withdrawn.

When the court-martial reconvened in open session, the law officer granted defense counsel's motion to change the pleas. Pleas of not guilty to all charges and specifications were entered and the defense proceeded to present its case. In the course thereof, two expert witnesses—a psychiatrist and another doctor with special training in the field of psychology—testified with regard to accused's capacity to entertain specific intent. Also, defense counsel called as a witness the Article 32 investigating officer, to whom accused had made two of the pretrial statements used against him, establishing that he had not explained to accused the technical legal significance of the term "steal," used by the latter in his confessions. After arguments by the parties on their respective positions, and proper instructions by the law officer, the court returned its findings.

At the outset it is clear that, when defense counsel made his opening statement, inquiry into the providence of the accused's pleas was compelled. See paragraph 70*b*, Manual for Courts-Martial, United States, 1951; Article 45(a), Uniform Code of Military Justice, 10 USC § 845. Congress provided, in the last-mentioned statute:

"If an accused arraigned before a court-martial makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty."[1]

The defense does not protest the necessity for inquiry into the pleas and withdrawal thereof. Indeed, it agrees such action was demanded. Rather, the gist of the contention pressed upon us by appellate defense counsel is that the law officer did not do enough, and should have gone further. Thus, it is asserted that, implicit in accused's initial guilty pleas to wrongful appropriation only, is the concession that he could entertain specific intent. Accordingly, so the argument proceeds, under the circumstances of the present case and despite the absence of any request therefor, the law officer was obliged to declare a mistrial *sua sponte*. In short, we are urged to hold that even though the initial pleas of guilty were neither offered nor treated as evidence by the prosecution,[2] still they had been before the members of the court and their withdrawal could not suffice to remove them from consideration by the court.

We invite attention to the language of Article 45 of the Code, supra. It expressly permits the same court to continue with the case on a not guilty basis

---

[1] It may be noted that the present Article continues, albeit in different verbiage, the rule prescribed in Article of War 21, Act of June 4, 1920, 41 Stat 787. See also Naval Courts and Boards, 1937, Sections 413, 416, 417.

[2] See Kercheval v United States, 274 US 220, 71 L ed 1009, 47 S Ct 582 (1927).

In the event of a change of plea; there is no suggestion that such proceedings must be before a new tribunal. The same practice was spelled out in Article of War 21, supra, and apparently was derived from earlier procedure. See Winthrop's Military Law and Precedent, 2d ed, 1920 reprint, pages 277–78. Thus it is apparent that the action taken in the case at bar was in conformity with the statute. Certainly it did not require that proceedings on a straight not guilty plea basis be before another forum. There is not, in this instance, any violation of procedure set forth in the statute as to instances where pleas have been improvidently entered.

That is not to say, of course, that the law officer may not, in the exercise of his sound discretion and ▮▮▮▮▮▮ ▮ if circumstances so dictate, declare a mistrial. Such remedy is, as this Court has pointed out, available to be employed in cases of manifest necessity to keep the proceedings free from substantial doubt as to legality, fairness, or impartiality. See United States v Stringer, 5 USCMA 122, 17 CMR 122. Nor is the accused's assent a prerequisite to directing a mistrial. But, there having been no motion by the defense for such relief in the present instance, a question of former jeopardy would arise if, on his own initiative, the law officer declared a mistrial, unless the posture of the case cast substantial doubt on the fairness of the trial.

We perceive no such doubt in the present instance as to require that the law officer *sua sponte* declare a mistrial. The Government's case was strong and there was apparently little the defense could do to controvert it. Indeed, the bulk of the offenses involved were committed by accused against his barracks mates; one other concerned tools he took from a place he was assigned to guard. There could be no dispute but that the property disappeared without authority, and accused, in each instance, had the opportunity. Moreover, he had been caught red-handed or connected with certain of the missing property. Additionally, accused, who was an air policeman shown to be thoroughly familiar with his rights, had voluntarily confessed his complicity in the crimes. Under those circumstances, the possibility may fairly be suggested that defense counsel's trial tactics in stipulating much of the Government case by way of expected testimony, was to avoid, insofar as possible, any hostile atmosphere in the courtroom that might result from having victims testify in person.

Be that as it may, however, it is clear the Government's case was strong and the defense could not hope to shake substantially the evidence it presented. The sole item upon which issue was joined was whether accused's acts were accompanied by the requisite specific intent, and even in the defense's opening statement accused's capacity to entertain specific intent was challenged. Thus it is wholly understandable why defense counsel declined the continuance offered by the law officer, and was content to leave the Government's evidence in the status it already existed.

So, too, the same may be said about the absence of any request for mistrial. The whole of the discussion regarding the providence of the guilty pleas initially entered was outside the hearing of the court members. All that transpired before them was: (1) The original pleas themselves, and these, it is to be noted, were to lesser offenses only for all practical purposes, not judicial confessions of guilt as charged; (2) the appointed defense counsel's opening statement, in which accused's capacity to entertain specific intent was expressly challenged; (3) the law officer's action granting the defense motion to withdraw the original pleas and substitute outright pleas of not guilty. Thereafter, the trial proceeded on the merits.

The issue was effectively joined as to accused's ability to entertain specific intent, and the danger is slim that the pleas initially entered would throw the pans of the scales of justice out of balance on that question. In order to do so, the lay court members would have had to ignore the law officer's in-

structions and the fact that the initial pleas were withdrawn, and reason—on their own and without qualified assistance—as closely as did the legally trained personnel who discussed the pleas in closed session. That is, first, that wrongful appropriation involved a specific intent; second, that by judicially confessing to that lesser offense, accused was admitting the specific intent to deprive temporarily; and, third, that accused was, accordingly, necessarily admitting his ability to entertain the requisite specific intent involved. The risk that the court members would so evaluate the pleas initially entered in the face of accused's pleas of not guilty to the eight counts of larceny; his consistent denial of the capacity to entertain the specific intent to deprive involved in that offense; and defense counsel's opening statement to the latter effect, is indeed minimal. Certainly it is not such as to demand that counsel move for mistrial. Neither was the situation so fraught with the possibility of unfairness that the law officer was, on his own initiative, compelled to void the proceedings and require a hearing before another court-martial.

We are not deterred in our conclusion the law officer did not err in failing, *sua sponte*, to declare a mistrial, by the fact he did not specifically admon-

ish the court members that the original but later withdrawn pleas could not be considered by them. It cannot be doubted that generally such an instruction is desirable. But it is also to be recognized that the fact of the original pleas and significance thereof may be all the more indelibly impressed on the fact-finders' minds by again calling their attention to them. In any event, the law officer here ordered the initial pleas withdrawn and substituted pleas of not guilty. And, as appellate defense counsel frankly admit, the original pleas were not thereafter mentioned. The prosecution neither offered nor treated the same as evidence, and the law officer did instruct both on the elements of the offenses and that the court-martial must presume accused's innocence until guilt was proved beyond reasonable doubt by legal and competent evidence. Under the circumstances of the case at bar, we are not persuaded that a mistrial was required for want of a more specific cautionary admonition.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.