UNITED STATES

v.

Quinton T. GRAHAM, Corporal
(E–4), U.S. Marine Corps.

NMCM 99 00630.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 7 Nov. 1997.

Decided 30 Nov. 2000.

Maj D.E. Anderson, USMC, Appellate Defense Counsel.

LT William C. Minick, JAGC, USNR, Appellate Government Counsel.

Before DeCICCO, Chief Judge,
ANDERSON, and PRICE, Appellate
Military Judges.

DeCICCO, Chief Judge:

A special court-martial composed of enlisted members convicted Corporal Graham, contrary to his pleas, of attempted indecent assault and indecent exposure in violation of Articles 80 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 934. The members sentenced him to a bad-conduct discharge and reduction to pay grade E–3. The convening authority approved the sen-

tence and applied the automatic reduction to pay grade E-1. Arts. 58a and 60, UCMJ, 10 U.S.C. §§ 858a and 860.

In this appeal under Article 66, UCMJ, the appellant raises five assignments of error. After carefully examining his brief, the Government's reply, and the record of trial, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).[1]

### The Mil.R.Evid. 412 Issue

The appellant was charged with committing an indecent assault upon his babysitter [JF] and with indecent exposure during the same alleged incident. At trial, the defense moved, pursuant to MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.) to introduce evidence of a sexual relationship between JF and her boyfriend [DA]. The appellant's defense was that JF's allegations were fabricated because the appellant caught JF and DA in the appellant's home when he returned home from work. Both a state court order and JF's parents had prohibited JF from having any contact with DA. The defense's theory was that such evidence was appropriate to show that JF had used her allegations as a "preemptive strike" against the appellant because she was concerned that the appellant would inform her parents or the court about her contact with DA. Record at 7. The military judge denied the defense motion, stating:

> while it is certainly relevant, in an attempt on the part of the defense to show a motive on the part of [JF] to fabricate, to offer

evidence that the accused "caught" [DA] and [JF] in his bedroom on 3 June 1997, and that [DA] and [JF] were legally required to remain apart, that they may have had a past, or even present, sexual relationship, adds nothing to the analysis, particularly since the court order precluded any—not just sexual—contact between [DA] and [JF], and since [JF]'s parents knew of the quality of her past relationship with [DA]. In short, that [JF] and [DA] had a sexual relationship does not make it any more likely, under the circumstances, that she would fabricate complaints against the accused.

Appellate Exhibit XIII. Although he ruled that evidence of the sexual relationship would not be admitted, the military judge nonetheless permitted the defense to advance its theory at trial that JF had fabricated the allegations to cover up her relationship with DA.

 Military Rule of Evidence 412 provides that evidence of other sexual behavior by the alleged victim of a sexual offense is generally inadmissible. One of the exceptions to the rule, and the one argued by the appellant, is that "evidence the exclusion of which would violate the constitutional rights of the accused" is admissible. Mil.R.Evid. 412(b)(1)(C). Whether or not certain evidence is constitutionally required is reviewed on a case-by-case basis, and a military judge's decision on the matter is reviewed on an abuse of discretion standard. *United States v. Buenaventura*, 45 M.J. 72, 79 (1996). Relevance is the key factor in determining when the evidence is constitutionally required to be admitted. *United States v. Carter*, 47 M.J. 395, 396 (1998). The test for relevance is whether the evidence has "any

---

1. Additionally, we have noted an irregularity not raised by the appellant, but we find no substantial prejudice as a result. The convening order appointed four officers and five enlisted members to the court-martial. The convening authority excused one of the officers. The other three officers were excused due to challenges. This left the five enlisted members on the court-martial. It appears from the record of trial that one of the five enlisted members was absent from the proceedings due to a medical emergency, without any actual indication on the record that his absence was excused by the convening authority. Record at 117–18. The court-martial proceeded

with the other four members without defense objection.

Generally, no court-martial proceeding may take place in the absence of any detailed member, except in certain circumstances that do not exist here. RULE FOR COURTS-MARTIAL 805(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.) (the edition in effect at the time of this trial). However, considering the holding of our superior court in *United States v. Sargent*, 47 M.J. 367, 369 (1997), we find no substantial frustration of the convening authority's court-composition power or material denial of a right of the appellant.

tendency to make the existence of any fact ... more probable or less probable than it would be without the evidence." Mil.R.Evid. 401. The defense has the burden of showing why the general prohibition should be lifted to admit evidence of other sexual behavior of the victim. *Carter*, 47 M.J. at 396 (citing *United States v. Moulton*, 47 M.J. 227, 229 (1997)).

■■■ The defense argued that a sexual relationship between JF and DA would show the strength of their emotional bond. The military judge disagreed. He found that the sexual element of the relationship would not have added to JF's motive to fabricate because the mere fact that she was even together with DA would have violated the court order and her parents' desires. This alone would have given her a motive to fabricate the allegation.

Under the facts of this case, we conclude that the military judge did not abuse his discretion in excluding evidence of a sexual relationship. We agree with his conclusion that the existence of such a relationship would not have made it more probable that JF would have fabricated her accusations. The fact that she may have been caught in the appellant's residence with DA was sufficient by itself to show a motive to fabricate. Thus, the defense did not carry its burden in establishing an exception to the general rule of inadmissibility. The fact that DA and JF may have had sexual relations would have added nothing to the defense theory. We therefore find no merit in this assignment of error.

### Admissibility of Incriminating Statements

The appellant also contends that his pretrial statements to a Criminal Investigation Division (CID) official were not voluntary. At trial, the defense moved to suppress the appellant's statements. The prosecution called Staff Sergeant (SSgt) Lamonzs of CID to testify. He stated that on 2 July 1997, or about a month after the incident, he interviewed the appellant at the CID office at Henderson Hall in Arlington, Virginia. He said the interview began at about 1100 and ended around 1730. He read the appellant his rights from the standard rights advisement form, and the appellant initialed them and signed the waiver of his rights. Appellate Exhibit VII. The appellant never requested to speak with an attorney or to terminate the interview at any time. SSgt Lamonzs related that he used no threats or promises of any kind and that he allowed the appellant three or four breaks over the course of the interview.

SSgt Lamonzs testified that initially the appellant related the story that he had found DA in his home with JF. But during a cigarette break, he noted that the appellant seemed bothered, and he asked the appellant what was wrong. The appellant then told him, "This is embarrassing, can we go back inside?" At that point, SSgt Lamonzs said that the appellant admitted making up the story that DA had been in his bedroom because he was worried what his wife would think. The appellant expressly admitted exposing himself to JF.

The last few hours of the interview were spent typing the final statement that the appellant signed under oath at 1732. Prosecution Exhibit 2. In this statement, the appellant said he arrived at home from work at around 1800 on 3 June 1997. JF was there with the appellant's children and JF's niece. The appellant stated he went into his bedroom and undressed in preparation for taking a shower. He wore nothing but a towel. He said he began imagining if JF would find him attractive and envisioned her seeing him nude. At that time, one of the appellant's children ran into his bedroom and the appellant called for JF to come and get her. The appellant said that as JF entered the bedroom "my towel fell to the floor" as he grabbed his daughter's arm. Prosecution Exhibit 2 at 2. The appellant indicated that JF just stood there before he said, "what's the matter you never saw a real man before?" *Id.* The appellant related that he also envisioned JF touching his penis, and when she reached for the child, he "brushed" her hand toward his penis, but she did not touch it.

The latter part of the statement contains answers to specific questions posed by SSgt Lamonzs. The appellant said that he found JF attractive, that he thought of being with

her sexually, and that he wanted to have sexual intercourse with her. He specifically said he "allowed" her to see him naked at his residence on 3 June 1997, and that he motioned her hand toward his penis with the intent of her touching it. He finally related a statement he had made to JF the day before the incident when she was exiting his vehicle. In commenting on her body, he said "that's nice." He related that JF grinned at this comment.

The appellant also testified concerning the taking of his statement at CID. He acknowledged that his rights were read to him and he was told what he was accused of. The appellant related that he had found DA at his residence with JF. He testified that SSgt Lamonzs told him that this story did not match with what the investigators knew because they knew that DA was at his job at the time of the incident on 3 June 1997, and that they had a time sheet from DA's boss. The appellant said that SSgt Lamonzs then told him he could get a dishonorable discharge and five years of confinement for making a false official statement. He said that during the cigarette break, SSgt Lamonzs encouraged him to tell the truth, that this was not a DWI, and that the matter would likely be handled at the battalion level. The appellant said he was about to be discharged due to completion of his enlistment and that he had a good-paying job lined up after his separation. He said that as SSgt Lamonzs typed the statement, he would ask the appellant if the statements were true, and the appellant said he "guessed so." The appellant testified that he just wanted to get out of the interview and said "whatever" and swore to and signed the statement. He said he did not think he was free to leave and that he was told he had to make a statement before he left.

The military judge made findings of fact on the motion. Appellate Exhibit XII. He found that the appellant was a 25–year old corporal who was told to report to CID on 2 July 1997. The appellant was advised of his Article 31, UCMJ, 10 U.S.C. § 831, rights and his right to counsel, and acknowledged those rights by his initials on the advisement form. He found the appellant voluntarily

waived his rights, and never asserted his rights to silence or to counsel. He also found the appellant was given comfort breaks and that no promises or threats were made. The appellant then made incriminating statements, and he signed them under oath. He concluded that the statements were voluntary, and he denied the defense motion.

■ The voluntariness of a confession is a question of law that we must review *de novo*. *United States v. Bubonics*, 45 M.J. 93, 94 (1996). Applying a totality of the circumstances test, the necessary inquiry is whether the confession is the product of an essentially free and unconstrained choice by its maker. *Id.; United States v. Sojfer*, 47 M.J. 425, 429 (1998). Although it is difficult to formulate a rule that encompasses all cases, courts have examined various circumstances including rights warnings, the length of the interrogation, the characteristics of the individual including age and education, and the nature of the police conduct including threats, physical abuse and incommunicado detention. *Sojfer*, 47 M.J. at 429–30.

■ In this case, appropriate rights warnings were given and acknowledged. The interrogation lasted for about six-and-a-half hours, including breaks, during normal working hours. The appellant was a 25–year old corporal, and a high school graduate with over five years of service in the Marine Corps. At the time of the interview, he served in a highly demanding and responsible billet as the information systems coordinator at the Plans, Policies, and Operations Department of Headquarters, Marine Corps. While the appellant was told to report to CID, he went unattended and was not handcuffed. The interview took place in a room that measured ten feet by six feet with a single entrance. The door was closed but not locked.

The military judge's findings of fact are adequately supported by the record and we adopt them as our own. Applying a *de novo* review of the voluntariness of the appellant's statement, we find that the appellant voluntarily waived his rights and never requested counsel or a termination of the interview. No threats or promises were made to him, and based on a totality of the circumstances,

we conclude that his statements were voluntary and essentially the product of a free and unconstrained choice. Accordingly, the military judge's ruling was correct and he did not abuse his discretion. The statements were properly admitted into evidence.

### Legal and Factual Sufficiency

The appellant next challenges the legal and factual sufficiency of the evidence that he committed the offense of indecent exposure. The gist of this argument is that the appellant exposed himself in his home, and not to "public view."

The offense of indecent exposure under the UCMJ is included under Article 134, UCMJ, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 88. The elements of this offense are:

(1) That the accused exposed a certain part of the accused's body to public view in an indecent manner;

(2) That the exposure was willful and wrongful; and

(3) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

In *United States v. Shaffer*, 46 M.J. 94 (1997), the U.S. Court of Appeals for the Armed Forces rejected an argument similar to the appellant's where various persons who had driven by the accused's home had observed him naked in his garage during daylight hours. The garage door was open and the accused did not attempt to cover himself while naked in his garage. The Court held that the fact that the appellant's exposures had taken place on his private property was of no particular moment. It was sufficient that the exposures were certain to be observed by the general population, even though they did not occur in public buildings or on public land.

In *Shaffer*, the Court cited *United States v. Choate*, 32 M .J. 423, 425 n. 3 (C.M.A.1991) for the proposition that decisions addressing prosecutions for indecent exposure generally rely on state court decisions representing the majority approach to the crime. *Shaffer*, 46 M.J. at 96. The case at bar presents a more

difficult question than the one in *Shaffer* because here the appellant did not expose himself in his residence in such a way that he could be seen from the street by the general public. Instead, he exposed himself to his 15–year old babysitter in the bedroom of his home. While we have found no military cases on point, we have found state court precedent indicating that when an accused exposes himself inside his home to another, it may constitute exposure to the public. *State v. Whitaker*, 164 Ariz. 359, 793 P.2d 116 (1990) (indecent exposure in front of daughters in the bedroom and in front of daughters' friends in the living room); *Greene v. State*, 191 Ga.App. 149, 381 S.E.2d 310 (1989) (indecent exposure in front of a babysitter in the bedroom and bathroom); *but see, State v. Romero*, 103 N.M. 532, 710 P.2d 99 (1985) (indecent exposure conviction reversed where accused exposed himself to his girlfriend's 8–year old daughter in the living room and in front of a 12–year old female in the kitchen).

We believe the majority approach is to apply the rule that "public view" occurs when the exposure is done in a place and in a manner that is reasonably expected to be viewed by another. *Whitaker*, 164 Ariz. at 362, 793 P.2d at 119; *see also, United States v. Carr*, 28 M.J. 661, 665 (N.M.C.M.R.1989). Such an analysis is based on a case-by-case approach, and must look to both the location of the event and all the surrounding circumstances.

In the case at bar, we find that the appellant willfully exposed himself to his babysitter in his bedroom. By inviting his babysitter into the bedroom and then allowing his towel to drop in front of her, the appellant converted his bedroom from a private place to a public one where he reasonably expected his babysitter would view his naked body. Under these circumstances, the appellant exposed himself to "public view." We have also considered JF's testimony that she immediately covered her eyes and that she never actually saw the appellant's genitals. This fact is of no legal moment as to whether the appellant's conduct was criminal. We find that the appellant's conduct established the offense of indecent exposure because the crime was in his exposing himself

under circumstances that he reasonably expected to be seen naked, and not whether she actually saw his genitalia. As pointed out by the Government in its brief, our superior Court recently found that a conviction for indecent exposure was legally sufficient where the appellant appeared before his victims with the fly of his trousers open while not wearing underwear, and the victims did not observe his genitalia. *United States v. Griggs*, 51 M.J. 418, 420 (1999).

 Based on a careful review of the record, we are convinced beyond a reasonable doubt that the evidence in this case was factually and legally sufficient. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

## Trial Counsel Misconduct

The next issue the appellant has raised concerns alleged misconduct by the trial counsel and assistant trial counsel regarding questions asked in cross-examination of defense witnesses and a comment made in closing argument. The appellant asks us to set aside the findings and the sentence. However, we find no basis to do so.

The first instance cited by the appellant occurred during the defense case. After the appellant testified, the defense called a retired lieutenant colonel to testify that the appellant was trustworthy and truthful. On cross-examination, the assistant trial counsel asked the witness whether he was aware that the appellant had been involved in an adulterous affair. Record at 280. The defense objected, and following an Article 39(a), UCMJ, session conducted in the absence of the court members, the military judge sustained the objection. When the members returned to the courtroom, he instructed them to completely disregard both the question and any response. Record at 286. All of the members indicated they could follow the instruction. *Id.*

The second basis alleged by the defense took place moments later. Another defense witness had testified as to the appellant's truthfulness. On cross-examination, the trial counsel asked the witness whether he knew of any problems or counseling sessions the appellant had received while stationed at Headquarters, Marine Corps. Record at 301. The defense again objected and the military judge sustained the objection. The defense did not request a curative instruction or make an allegation of misconduct. The military judge did not give the members a curative instruction, but earlier in the trial he had given them the standard instruction to disregard questions to which he had sustained objections. Record at 162.

The third basis for the appellant's argument involved a comment the trial counsel made in his closing argument on findings. Referring to the defense evidence of the appellant's truthful nature, the prosecutor said that the defense had given the members another defense, the "truthful Marine defense," and that it was not an uncommon defense used by defense attorneys. Record at 370. Although the defense did not object, the military judge instructed the members immediately upon completion of the argument to disregard the prosecutor's statement that other defense counsel in other cases had used "the truthful Marine defense." *Id.* The members indicated they could also follow this instruction. *Id.*

 Prosecutorial misconduct is generally defined as action or inaction by a prosecutor in violation of some legal norm or standard such as a constitutional provision, a statute, a Manual rule, or a professional ethics canon. *United States v. Golston*, 53 M.J. 61, 64 (2000) (citing *United States v. Meek*, 44 M.J. 1, 5 (1996)). Even where there is a characterization of prosecutorial misconduct, dismissal of the charges is not mandated in every case. *Meek*, 44 M.J. at 5. We are required to determine whether the matter had a substantial impact on the rights of the accused or if the violation was harmless.

 In this case, we do not find prosecutorial misconduct. While the prosecution's questions on cross-examination and comment in argument were objectionable, they did not constitute "prosecutorial misconduct." After the defense objected, the military judge decided to sustain the objections, and the defense never asserted that prosecutorial misconduct occurred. As for the final instance during argument, the defense did not even object. Even had we found misconduct, we

discern no material prejudice to the appellant's substantial rights. Art. 59(a), UCMJ; *Meek*, 44 M.J. at 7. The military judge issued curative instructions concerning two of the alleged violations, and the members indicated they could follow them. Court members are presumed to follow such instructions. As for the other, the defense did not even request an instruction. We view these three instances as isolated matters that did not establish prosecutorial misconduct, and they were nonetheless harmless.

## The Mistrial Issue

The appellant testified in his own defense that he discovered DA at his home with JF. In rebuttal, the prosecution called a witness who, according to the proffer, would testify that he worked with DA on the date of the incident and that DA could not have been at the appellant's residence at the time appellant alleged. Record at 330. The defense indicated that he had not been made aware of this witness's identity or expected testimony. Following the proffer, the defense stated it did not object, but it requested time to interview the witness. The court-martial recessed for 40 minutes.

Upon returning from the recess, the trial counsel indicated that he had learned of this witness three days before, and he had not revealed the existence of this witness to the defense based on his reading of RULE FOR COURTS MARTIAL [R.C.M.] 701. The military judge disagreed with the trial counsel's interpretation of R.C.M. 701, and the defense requested that the witness not be permitted to testify. After another recess, the defense moved for a mistrial. The military judge found that R.C.M. 701 was violated, but he denied the request for a mistrial. He told the defense that it could have a continuance, if desired. Record at 346–47. The defense replied that it preferred to proceed that day, so the military judge allowed the prosecution to call the witness.

■■■■ R.C.M. 701(a)(3) provides:

(3) *Witnesses.* Before the beginning of trial on the merits the trial counsel shall notify the defense of the names and addresses of the witnesses the trial counsel intends to call:

(A) In the prosecution case-in-chief; and

(B) To rebut a defense of alibi, innocent ingestion, or lack of mental responsibility, when trial counsel has received timely notice under subsection (b)(1) or (2) of this rule.

There is no requirement under the rule for the prosecution to notify the defense of a possible rebuttal witness who will testify to something other than alibi, innocent ingestion, or lack of mental responsibility. However, the military judge may exclude prosecution evidence in rebuttal if that evidence should have been offered in the prosecution's case-in-chief and has not fulfilled the purpose of rebuttal. *United States v. Murphy*, 33 M.J. 323, 328 (C.M.A.1991).

■■■ We disagree with the military judge's conclusion that the prosecution violated R.C.M. 701 or the holding in *Murphy* in this case. The proffered witness was not a witness who was intended to be called in the prosecution's case-in-chief. In fact, had the prosecution attempted to call him at that time, his testimony would not have been relevant to any issue in the case. It only became relevant *after* the appellant testified that DA was present in the appellant's residence at 1800 on 3 June 1997. Also, this witness was not a rebuttal witness on the defenses of alibi, innocent ingestion, or lack of mental responsibility. The trial counsel was therefore not required to disclose the identity of the rebuttal witness to the defense.

■■■ As we have found no violation of R.C.M. 701, we also find the "drastic remedy" of a mistrial was not required. *United States v. Dancy*, 38 M.J. 1, 6 (C.M.A.1993); *United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A.1990). Such a remedy is appropriate when circumstances arise that cast substantial doubt on the fairness or impartiality of the trial. *Dancy*, 38 M.J. at 6; *United States v. Waldron*, 15 U.S.C.M.A. 628, 36 C.M.R. 126, 1966 WL 4430 (1966). The military judge in this case gave the defense the opportunity to interview the rebuttal witness, and the defense declined an opportunity for a continuance. Under these circumstances, and considering the lack of a violation of

R.C.M. 701 or conflict with *Murphy*, we have no doubt of the impartiality or fairness of this trial. We reach the same conclusion, even considering the other alleged prosecutorial misconduct with this matter.

The findings and sentence, as approved on review below, are affirmed.

Judge ANDERSON and Judge PRICE concur.