# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39003 (reh)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Krishil S. PRASAD**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 June 2019

————————————

*Military Judge:* Christina M. Jimenez (rehearing).

*Approved sentence:* Bad-conduct discharge, confinement for 210 days, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 29 March 2018 by GCM convened at Minot Air Force Base, North Dakota.

*For Appellant:* Major Dustin J. Weisman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, JOHNSON, and LEWIS, *Appellate Military Judges.*

Chief Judge MAYBERRY delivered the opinion of the court, in which Judge LEWIS joined. Senior Judge JOHNSON filed a separate concurring opinion.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MAYBERRY, Chief Judge:

This case is before us for the second time. In October 2015, a general court-martial composed of officer and enlisted members found Appellant guilty, contrary to his pleas, of two specifications of sexual assault and one specification of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. The court sentenced Appellant to a dishonorable discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence. On initial appeal, Appellant raised three assignments of error (AOEs), and we granted relief as to one of them by setting aside one of the sexual assault convictions pursuant to *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). We also set aside the sentence and authorized a rehearing on both the set aside offense and the sentence. *United States v. Prasad* (*Prasad I*), No. ACM 39003, 2017 CCA LEXIS 610 (A.F. Ct. Crim. App. 5 Sep. 2017) (unpub. op.).

On 8 February 2018, the General Court Martial Convening Authority (GCMCA) dismissed the specification we had set aside,[1] having determined a rehearing was impracticable, and ordered a rehearing for the purpose of sentencing Appellant on the affirmed findings. The rehearing was held at Minot Air Force Base (AFB), North Dakota, on 28–29 March 2018.[2] A general court-martial composed of officer members sentenced Appellant to a bad-conduct discharge, confinement for 210 days, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant now asserts two AOEs: (1) whether the court-martial was properly constituted when a detailed member did not participate; and (2) whether Appellant is entitled to relief based on the fact that he paid his own travel expenses to return home due to "the slow post-trial processing" of his case. Appellant also requests that we reconsider our decision in *Prasad I*. We decline to reconsider our decision in *Prasad I*, find no prejudicial error, and affirm the approved sentence.

---

[1] We note that the specification is not lined out on the charge sheet found at page 2.4 of the record of trial.

[2] The case was forwarded from Grand Forks AFB, North Dakota, to Minot AFB, North Dakota, due to the fact that the supervisory defense counsel for Appellant's trial defense counsel at the time of the original trial was the staff judge advocate at Grand Forks AFB at the time the case was returned in accordance with *Prasad I*.

## I. BACKGROUND

The original rehearing convening order (SO A-4), dated 8 February 2018, contained the names of 12 officers. On 27 March 2018, the day before the rehearing was scheduled to start, a second convening order (SO A-6) was issued. The second convening order relieved five members from SO A-4 and detailed five new officers, one of whom was Captain (Capt) RW. The next day, when the second convening order was identified on the record, the military judge inquired as to whether the trial defense counsel had received it. Counsel replied that she had and had no concerns or objections. After a series of sessions on the record without the members, 11 members joined the proceedings. When trial counsel announced the names of the members, only 11 names were read and Capt RW's was not one of them. After voir dire, eight members were selected to serve; Capt RW was not one of them.

The rehearing concluded the following day, 29 March 2018. Appellant was sentenced, *inter alia*, to 210 days of confinement—the amount of time Appellant served in pretrial confinement. In light of the fact that Appellant had been confined in excess of 700 days, he was not confined again. Appellant had obtained employment while on appellate leave awaiting final appellate resolution of his case. Appellant was recalled to active duty for the rehearing and remained on active duty throughout the court-martial. After the completion of the court-martial, Appellant learned that it could take months to complete the post-trial processing of the rehearing and requested to go on voluntary excess leave. That request was approved, and he departed North Dakota on 30 March 2018, the day after the rehearing concluded. Appellant personally paid his travel expenses to return home.

## II. DISCUSSION

### A. Request for Reconsideration

This court issued *Prasad I* on 5 September 2017. Appellant filed a request for reconsideration with suggestion for reconsideration *en banc* on 3 October 2017. Citing to Rules 19(b) [3] and 17 of the Joint Courts of Criminal Appeals Rules of Practice and Procedure (Joint Rules) and Rule 19.3 of the Air Force Court of Criminal Appeals Rules of Practice and Procedure (AF Rules), the United States opposed the motion on 10 October 2017. The request was referred to all appellate judges present for duty but no judge present called for a

---

[3] In the Joint Rules of Appellate Procedure for Courts of Criminal Appeals, effective 1 January 2019, these rules are now numbered 31 and 27 respectively. We will use the previous rule numbers in this opinion.

vote for reconsideration *en banc*. The original panel[4] voted 3–0 against reconsideration, and the order denying the same was issued on 16 October 2017. After neither Appellant nor the Government filed a petition for grant of review with the United States Court of Appeals for the Armed Forces (CAAF), on 15 November 2017 The Judge Advocate General returned the case to the GCMCA for disposition in accordance with our opinion.

The 5 February 2019 assignments of error brief filed by Appellant's counsel includes a footnote that reads:

> In his original assignment of errors [sic] brief, dated 4 April 2017, [Appellant] raised three points of error. This Court's opinion addressed all of the assignments of error, except the second assignment of error (factual sufficiency) as it related to the dismissed specification. [Appellant] requests this Court reconsider its decision on Issues I–III of his original assignment of errors [sic] brief on the remaining specifications. He incorporates the facts and arguments on those points of error into this brief by reference.

This "second request" for reconsideration was filed 18 months after the panel's original opinion and 17 months after Appellant's original request for reconsideration was denied—well beyond the authorized 30-day window contained within Joint Rule 19(b). Joint Rule 19(c) additionally requires that a motion for reconsideration "shall briefly and directly state the grounds for reconsideration, including a statement of facts showing jurisdiction of the Court." Appellant's second request was not filed as a motion, is silent as to how this Court has jurisdiction to consider this request, and contains no new evidence, facts, or legal analysis.

In *United States v. Williams*, 75 M.J. 244 (C.A.A.F. 2016), our superior court addressed a similar issue where the Government attempted to extend CAAF's sixty-day deadline for filing a certificate for review.[5] In *Williams*, the Government filed consecutive motions for reconsideration with the court of criminal appeals (CCA) (30 and 45 days after the original decision), with the second request seeking reconsideration *not* of the original panel opinion, but of

---

[4] The original panel consisted of Judges Mayberry, Johnson, and Speranza. Judge Speranza departed the court for another assignment prior to the completion of the rehearing.

[5] In accordance with CAAF's Rules of Practice and Procedure 19(b)(3) and 34(a), when the Government is seeking review, the filing deadline is either 60 days from the date of the decision of the court of criminal appeals (CCA) or, if a petition for reconsideration was filed at the CCA, within 60 days of the date of final action on the petition for reconsideration.

the denial of the initial request for reconsideration. *Id*. at 245. The CAAF held that the second request "did not and could not seek reconsideration of the original decision" and thus failed to toll the time limits imposed by the CAAF rules. *Id*. at 246. In *Williams*, the CAAF opined that "[t]oday, we face the 'fancied danger' contemplated in [*United States v. Sparks*, 18 C.M.R. 77, 83 (C.M.A. 1955)]." *Williams*, 75 M.J at 246. In *Sparks*, the Court of Military Appeals (CMA), predecessor to CAAF, held that "[a]s to any fancied danger that petitions for reconsideration of petitions for reconsideration will result, we are sure that there is no right in an accused to petition without limit." 18 C.M.R. at 83.

The case now before us goes beyond the fancied danger contemplated by *Sparks* and realized in *Williams*. Here, Appellant filed two requests for reconsideration, 17 months apart. The initial motion for reconsideration was denied, and Appellant opted not to file a petition for grant of review with CAAF. In light of our original decision, the set-aside specification was dismissed and a rehearing on sentencing was held. Appellant has now filed additional AOEs associated directly to the sentencing rehearing. Like the CAAF in *Williams*, we see no basis for suspending the requirements of this court's filing deadlines and allowing Appellant to seek review of what has already been denied—reconsideration of the denial of reconsideration—17 months after the denial. We decline to reconsider our decision in *Prasad I*.

## B. Composition of the Panel

### 1. Additional Facts

The authenticated record of trial contains both convening orders (SO A-4 and SO A-6), with no names lined through. In response to Appellant's AOE, the Government simultaneously filed its Answer and a Motion for leave to attach a declaration from Capt AW, the chief of military justice at the GCMCA's servicing legal office. Appellant did not oppose the motion to attach. On 15 March 2019 we granted the motion to attach. Appellant did not subsequently file a reply brief.

Capt AW's declaration provides a chronology of events following the issuance of SO A-6. The same day SO A-6 was issued, 27 March 2018, Senior Airman (SrA) LR, a paralegal from the Minot AFB legal office, contacted Capt RW and informed him of his selection as a court member. That evening, Capt RW responded, "I will be coming back from alert on my T-Day tomorrow and will not be available for jury duty."

Early the day of trial, 28 March 2018, SrA LR contacted Capt AW and informed her that Capt RW was "out in the field and is returning this afternoon." Capt AW passed this information along to the GCMCA and the GCMCA's staff

judge advocate (SJA), "who excused the member by striking through the member's name on [SO] A-6."[6] The order also included an additional signature block by the SJA and the statement "Member excused effective 28 March 2018."

At 1019 Eastern Time[7] on 28 March 2018, Capt AW emailed SO A-6 with the excusal language and Capt RW's struck-through name to SrA LR at the Minot AFB legal office. The local time at Minot AFB, which is in the central time zone, would have been 0919. Capt AW's declaration includes that her understanding was that "the member's unavailability was discussed with the parties and the military judge." A copy of the modified SO A-6 and an email from Capt AW to SrA LR with the modified SO A-6 excusing Capt RW was attached to Capt AW's declaration.

Approximately 40 minutes after Capt AW's email containing Capt RW's excusal, Appellant's court-martial was called to order. SO A-6 and the original SO A-4 were inserted into the record at that time, but the excusal of Capt RW was not discussed on the record, and neither the email nor the modified convening order (SO A-6) were entered into the record. Preliminary proceedings not involving the members continued for three hours.

Nearly four hours after Capt AW sent Capt RW's excusal to the Minot AFB legal office, Appellant's court-martial convened with the members for the first time. The names of Appellant and all persons detailed to the court-martial were read, including the 11 remaining court members, and the court was assembled. Capt RW's name was not read. Neither Appellant nor his trial defense counsel objected to Capt RW's absence.

**2. Law**

Whether a court-martial is properly constituted is an issue of law we review de novo. *See United States v. Colon*, 6 M.J. 73, 74–75 (C.M.A. 1978).

The members of a court-martial panel are detailed for such service by the convening authority. Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2).[8] Prior to assembly of the court-martial, the convening authority has broad power to excuse any member of the court from participating in the case. Article 25(e), UCMJ, 10 U.S.C. § 825(e). "Congress has authorized the convening authority

---

[6] The SJA had previously been delegated the authority to excuse individual members pursuant to R.C.M. 505 in August 2016.

[7] The time is based on Capt AW's email, which was sent from her duty station in New Jersey.

[8] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), which applied during Appellant's trial and clemency.

to delegate excusal authority to his or her staff judge advocate, legal officer, or any other principal legal assistant, subject to such regulations as may be prescribed." *United States v. Coo*k, 48 M.J. 434, 436 (C.A.A.F. 1998) (citation omitted).

Rule for Courts-Martial (R.C.M.) 505(a) states "[s]ubject to this rule, the members, military judge, and counsel may be changed by an authority competent to detail such persons. Members also may be excused as provided in subsections (c)(1)(B)(ii) and (c)(2)(A) of this rule." R.C.M. 505(b) dictates the procedure for such changes, including that "[a]n order changing the members of the court-martial, except one which excuses members without replacement, shall be reduced to writing before authentication of the record of trial." "When members or counsel have been excused and the excusal is not reduced to writing, the excusal should be announced on the record." *Id.*, Discussion.

R.C.M. 505(c)(1)(B)(i) provides the convening authority the ability to delegate "authority to excuse individual members to the staff judge advocate or legal officer or other principal assistant to the convening authority" when such an excusal is done before assembly of the court-martial.

R.C.M. 805(b) states:

> Unless trial is by military judge alone . . . no court-martial proceeding may take place in the absence of any detailed member except: Article 39(a) sessions under R.C.M. 803; examination of members under R.C.M. 912(d); [or] when the member has been excused under R.C.M. 505 or 912(f) . . . . No general court-martial proceeding requiring the presence of members may be conducted unless at least five members are present . . . .

In *Colon*, a case decided before the implementation of R.C.M. 805, the CMA held that the absence of four members detailed to a ten-member general court-martial did not constitute jurisdictional error, holding:

> Articles 16, and 29(b) and (c), UCMJ, 10 USC §§ 816, 829(b), (c), respectively, . . . permit a court-martial to lawfully proceed where the number of members is less than that detailed by the convening authority but equal to or greater than the required quorum for that particular type of court-martial.

6 M.J. at 74.

In *United States v. Sargent*, 47 M.J. 367, 368 (C.A.A.F. 1997) (citation omitted), the CAAF acknowledged that R.C.M. 805 was drafted in light of the decision in *Colon* and opined that "[n]either its wording nor its regulatory history impart to it jurisdictional significance." In *Sargent*, the CAAF held "the statutory quorum for this general court-martial was five members" and "[w]hen the

court-martial opened, nine detailed members were in attendance; therefore, this court-martial was fully empowered to consider this case." 47 M.J. at 369 (citing *United States v. Gebhart*, 34 M.J. 189 (C.M.A. 1992)).

"Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). We review forfeited issues for plain error, whereas "a valid waiver leaves no error to correct on appeal." *Id.* (citations omitted). To prevail under a plain error analysis, an appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (citations omitted).

"A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)). Whether an accused has waived or merely forfeited an issue is a question of law we review de novo. *Ahern*, 76 M.J. at 197 (citing *United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005)).

### 3. Analysis

Based on prior judicial interpretations that Article 25 created a "substantial right in the military accused to have the *convening authority* choose . . . the basic composition of the court-martial," the court in *Colon* held "implicit in this right . . . is the requirement that a convening authority be notified, prior to assembly, of absent members he detailed to sit on a court." 6 M.J. at 75 (citations omitted). The record now shows that Capt RW was excused prior to the court being assembled by a proper delegate of the convening authority. Such an excusal was completed consistent with R.C.M. 505 and, per Capt AW's understanding, was discussed with the parties and the military judge. While it is true that no discussion was held on the record and none of the many R.C.M 802 session summaries included any such discussion, in light of the fact that Capt RW's excusal was reduced to writing, no discussion was required per R.C.M. 505.

We are troubled by the inexplicable absence of the modified SO A-6 in Appellant's authenticated record of trial. Nevertheless, the attachments to Capt AW's declaration clearly establish that Capt RW was properly excused from Appellant's court-martial prior to its assembly and explain to our satisfaction that the military judge, Appellant, and all counsel were aware of the excusal of Capt RW, and why neither Appellant nor his counsel objected on the record to the obvious and conspicuous absence of Capt RW.

Assuming *arguendo* that Capt RW was not properly excused, we consider whether Appellant's silence to Capt RW's absence waived or forfeited this issue, and if not, whether the error, if any, resulted in prejudice. *See Cook*, 48 M.J. at 436. In *Cook*, the appellant did not object to the excusal of members when announced at trial, but on appeal challenged the composition of the panel. *Id.* As was the case in *Cook*, there is nothing in the record to indicate that Appellant was dissatisfied with the panel at trial. Unlike *Cook*, Appellant does argue he was prejudiced, but Appellant's only assertion of prejudice is that he "would have had an additional potential vote for a more favorable punishment" and that he "lost a potential vote for a lower sentence." Under this scenario, we review for plain error. We find that the error, if any, was not plain error.

Our sister court has relied on *Sargent* on two occasions, finding that the unexcused absence of a detailed member merited no relief. *See United States v. McMurrin*, 72 M.J. 697, 700 n.5 (N.M. Ct. Crim. App. 2013) (finding no prejudice where jurisdictional requirement for quorum was still met and the appellant made no showing of material prejudice to a substantial right); *United States v. Graham*, 54 M.J. 605, 607 n.1 (N.M. Ct. Crim. App. 2000) (finding "no substantial frustration of the convening authority's court-composition power or material denial of a right of the appellant" where one of five members was absent from the proceedings due to a medical emergency without any actual indication on the record that his absence was excused by the convening authority, and the court-martial proceeded without defense objection).

Appellant's assertion that "he would have had an additional vote for a more favorable punishment" is speculative at best. Even if Capt RW had been present, there is no way of determining if he would have remained on the panel, and if he did, that his vote would have resulted in a lesser punishment than that imposed. Considering the members adjudged significantly less confinement and downgraded the imposed punitive discharge from a dishonorable discharge to a bad-conduct discharge, Appellant has failed to establish how having Capt RW on his panel would have resulted in an even *more* favorable sentence for his convictions for one specification of sexual assault and one specification of abusive sexual contact. Appellant has failed to demonstrate any prejudice, let alone "substantial prejudice" required in this instance. *See Sargent*, 47 M.J. at 369; Article 59(a), UCMJ, 10 USC § 859(a).

## C. Relief for "Post-Trial Delay"

Appellant does not challenge the legality or appropriateness of the approved sentence. Instead, he seeks to obtain reimbursement for the cost of his travel home after garnering approval to go on voluntary excess leave the day after his court-martial ended. Appellant relies on "post-trial delay" and this court's Article 66(c), UCMJ, authority to only affirm a sentence that "should be

approved." Appellant asks that we reduce his forfeitures or confinement "so that he will receive compensation roughly equal to the $591.80 he incurred moving back to California." As this issue concerns a matter not directly connected to the approved sentence, we must first determine whether we have jurisdiction to grant relief. *See United States v. Buford*, 77 M.J. 562, 563, 565 (A.F. Ct. Crim. App. 2017) (CCA authority to grant relief pursuant to Article 66(c) "limited to a legal deficiency that *directly impacted a component of the sentence*"), *rev. denied*, 77 M.J. 332 (C.A.A.F. 2018). We hold that we do not.

### 1. Additional Facts

The military judge authenticated the transcript on 18 July 2018. The staff judge advocate's recommendation (SJAR) and record of trial (ROT) were received by trial defense counsel and Appellant on 19 July 2018. An electronic copy of the ROT and SJAR were sent to Appellant via a file exchange website utilized by federal agencies, and he downloaded them that same day. A hard copy of the SJAR and ROT were sent to Appellant via the United States Postal Service. Initial delivery was attempted on 26 July 2018 but there was no secure location to leave the package, and Appellant was directed to arrange for redelivery or pick up the package. Appellant acknowledged receipt of the hard copy ROT and SJAR on 3 August 2018. Appellant and his counsel submitted clemency matters to the convening authority on 10 August 2018. Neither trial defense counsel nor Appellant brought the matter of Capt RW's absence to the attention of the convening authority in their submissions. Action was taken by the convening authority on 17 August 2018, 141 days after the sentence was announced.

### 2. Law

Whether an appellant has been deprived of his due process right to speedy appellate review, and whether constitutional error is harmless beyond a reasonable doubt are questions of law we review de novo. *United States v. Arriaga,* 70 M.J. 51, 55–56 (C.A.A.F. 2011) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)).

When the convening authority does not take action within 120 days of the completion of trial, the delay is presumptively unreasonable. *Moreno*, 63 M.J. at 142. Where a presumptively unreasonable post-trial delay is established, we consider the four factors the CAAF identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review have been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id*. at 135 (citations omitted).

Absent a showing of prejudice, a due process violation warranting relief only occurs when, "in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 60 M.J. 353, 362 (C.A.A.F. 2006).

Even when there is no showing of "actual prejudice" Appellant may be entitled to relief under this court's Article 66(c), UCMJ, authority if the delay is excessive and we deem relief appropriate under the circumstances. *See United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). In *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264, 269 (C.A.A.F. 2016), although the CAAF upheld our authority to grant relief under Article 66(c), they did not recognize unlimited authority under Article 66(c) for a CCA to grant sentencing relief, including for errors collateral to the court-martial process.

"The scope and meaning of Article 66(c), UCMJ, which is the source of this court's authority, is a matter of statutory interpretation, which, as a question of law, is reviewed de novo." *Buford*, 77 M.J. at 564 (citing *United States v. Schloff,* 74 M.J. 312, 313 (C.A.A.F. 2015)). Article 66(c), UCMJ, establishes the jurisdiction of a CCA as follows:

> In a case referred to it, the [CCA] may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

10 U.S.C. § 866(c).

### 3. Analysis

The 141-day delay is presumptively unreasonable. However, Appellant requests this court to grant relief based on the "delay" so as to "reimburse" him for the cost of his travel home the day after his trial ended. Appellant was familiar with the post-trial process as a result of his initial court-martial. Pursuant to *Moreno*, the presumptively *reasonable* post-trial processing time is 120 days. *See Moreno*, 63 M.J. at 142. Appellant left the day immediately following his trial, thereby incurring the travel expenses he now seeks reimbursement for.

*Buford* noted "the authority validated in *Gay* was rooted and limited to a legal deficiency that *directly impacted a component of the sentence*." 77 M.J. at 565.

While Appellant's attempt to apply *Tardif* to the facts of his case is innovative, it is irreconcilable with the facts and the law. Appellant personally chose to go on voluntary excess leave only one day after his court-martial concluded. The fact that the post-trial processing ultimately exceeded the judicially recognized reasonable time standards did not cause him to expend his own funds. His personal, and understandably laudable, desire to return home so as not to lose his job was the genesis of that expense.

Appellant does not assert that the expectation that he remain on active-duty in a pay status awaiting post-trial processing was done with an intent to subject him to illegal punishment. Rather, his allegation is nothing more than an attempt to create a claim for additional relief after the Government granted his request to go on voluntary excess leave. The Government could not have unilaterally required him to take excess leave at that stage of the proceeding—only he could have initiated such action, and he did. Now, he wants this court to grant him further relief without any evidence of prejudice directly attributable to the post-trial delay.

There was no direct correlation between the ultimate delay and his departure as there had been no delay at the time of his departure. As was the case in *Buford*, 77 M.J. at 564–66, we are neither persuaded that we have unlimited authority to grant relief nor convinced that we should exercise any of our limited authority to grant relief for an administrative matter unrelated to any legal deficiency that directly impacted Appellant's sentence and, more importantly, unrelated to the legality or appropriateness of his court-martial sentence.

## III. CONCLUSION

The approved findings were previously affirmed. The approved sentence is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the sentence is **AFFIRMED**.

JOHNSON, Senior Judge (concurring):

I concur with the opinion of the court specifically with regard to the issues presently before the court, including the denial of Appellant's request that we reconsider the opinion in *Prasad I*. I write separately simply to note that I continue to adhere to the view expressed in my dissenting opinion in *Prasad I*

that, in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016) and *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017), and now also *United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017), I would have set aside the previously-affirmed findings of guilty due to constitutional error that was not harmless beyond a reasonable doubt.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court